# Exhibit A

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

FILED
GARY HARRISON
CLERK, SUPERIOR COURT

4/12/2019 4:29:41 PM

BY: ALAN WALKER
DEPUTY

Case No. C20191876
HON. RICHARD E GORDON

1  Scott H. Zwillinger (019645)
2  Jeremy L. Phillips (016702)
   **GOLDMAN & ZWILLINGER PLLC**
3  17851 North 85th Street, Suite 175
   Scottsdale, AZ 85255
4  Main:  (480) 626-8483
5  Facsimile:  (480) 383-6224
   E-mail:  docket@gzlawoffice.com
6  *Attorneys for Plaintiff*

7

8              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9                   **IN AND FOR THE COUNTY OF PIMA**

10 LINDA FLOYD, on behalf of herself and as          Case No.:
11 personal representative of the Estate of Gary
   Lee Floyd and as next friend of G.F. JR., a
12 minor; G.F. Jr. minor son of Gary Floyd,           **COMPLAINT**

13
                        Plaintiffs,
14
   v.
15
   CORIZON HEALTH, INC., a Delaware
16 corporation; CORIZON, INC., a Missouri
17 corporation; CORIZON LLC, a Missouri
   limited liability company; CORIZON
18 HEALTH OF NEW JERSEY, LLC, a New
19 Jersey limited liability company; LANCE
   ASHWORTH, an individual, SPOUSE
20 ASHWORTH, a married couple; BERTAM
21 HUROWITZ, an individual, SPOUSE
   HUROWITZ, a married couple; VIOLA
22 CORDOVA, an individual, SPOUSE
23 CORDOVA, a married couple; ANDREA
   ROBERTS, an individual, SPOUSE
24 ROBERTS, a married couple, J. DOES 1-
25 100; WHITE PARTNERSHIPS 1-100;
   BLACK CORPORATIONS 1-100,
26
27                      Defendants.
28

1

1      NOW COMES Plaintiffs Linda Floyd, individually and as personal representative of the

2 Estate of Gary Floyd, deceased, and G.F. Jr., by their attorneys, Goldman and Zwillinger,

3 PLLC, and for her cause of action against Defendants, hereby alleges as follows:

4

5                               **THE PARTIES**

6     1.       At all relevant times,  Gary Lee Floyd ("Gary") was incarcerated and in the care,

7 custody and control of the Arizona Department of Corrections ("ADC").

8     2.       At all relevant times, Linda Floyd was the mother of Gary Lee Floyd and is a

9 resident of the State of Arizona, County of Maricopa.

10     3.       At all relevant times, G.F. Jr. was a minor and is a resident of the State of Arizona,

11 County of Maricopa.

12     4.       Defendant Corizon Health, Inc. is a privately-owned Delaware corporation that

13 was authorized to, and did, conduct business in Arizona, including in Pima County.

14     5.       Defendant Corizon Inc. is a privately-owned Missouri corporation that was

15 authorized to , and did, conduct business in Arizona, including in Pima County.

16     6.       Defendant Corizon, LLC is a Missouri limited liability company that was

17 authorized to, and did, conduct business in Arizona including Pima County. Corizon, LLC is a

18 wholly owned subsidiary of Corizon Heath, Inc.

19     7.       Defendant Corizon Health of New Jersey, LLC is a New Jersey limited liability

20 company that was authorized to, and did, conduct business in Arizona including in Pima

21 County.

22     8.       Collectively, the Defendants named in paragraphs 4 through 7 above are herein

23 referred to as "Corizon."

24     9.       Defendant Lance Ashworth is a medical professional employed or contracted by

25 Corizon to provide services to the ADC.

26     10.      Defendant Bertram Hurowitz is a medical professional employed or contracted by

27 Corizon to provide services to the ADC.

28

11.     Defendant Viola Cordova is a medical professional employed or contracted by Corizon to provide services to the ADC.

12.     Defendant Andrea Roberts is a medical professional employed or contracted by Corizon to provide services to the ADC.

13.     Collectively, the individual Defendants are herein referred to as "Medical Providers".

14.     J. Does 1-100 are certain unknown actors, including employees or contractors of Corizon who, through their own actions or inactions, have caused or assisted others in causing the incidents and resultant harm set forth below. The identity of these individuals is not yet known and Plaintiff will amend the complaint to allege the true names and capacities of the various J. Doe defendants as they are learned.

15.     Spouse defendants are named because at all relevant times the Medical Provider defendants were working for or on behalf of their marital communities, if any, and therefore the marital communities are liable for the actions or inactions of the Medical Provider defendants.

16.     Defendants White Partnerships 1-100 and Black Corporations 1-100 represent corporate defendants who may be liable for the acts or omissions set forth in Plaintiff's Complaint. Plaintiff will substitute the true names of these defendants upon discovery.

**JURISDICTION AND VENUE**

17.     Jurisdiction is proper in this Court pursuant to A.R. S. §12-123.

18.     Venue is proper in this Court pursuant to A.R.S. §12-401.

19.     The amount in controversy exceeds the minimum jurisdictional limits of this Court.

**FACTUAL ALLEGATIONS**

20.     On July 31, 2014 Gary was remanded into the custody of the ADC following a shoplifting conviction.

21.     On December 4, 2014 Gary pled guilty in Maricopa County Superior Court to Trafficking in Stolen Property for an offense alleged to have occurred April 14, 2014 and was sentenced to 3.5 years in the custody of the ADC.

22.     Gary was eligible for release from the ADC's custody on December 8, 2017.

23.     In the months prior to Gary's sentencing to the ADC, doctors at the Banner Estrella Medical Center told Gary that his heart was functioning at 15% efficiency.

24.     In the months prior to Gary's sentencing to the ADC, doctors at the Banner Estrella Medical Center told Gary that he required a cardiac pacemaker be implanted to avoid heart failure.

25.     A "fistula" is a medical term that describes an abnormal passageway in the body.

26.     In the months prior to Gary's sentencing to the ADC, doctors at the Banner Estrella Medical Center told Gary that he had a fistula between his intestines and his bladder that allowed material from the intestine to travel into the bladder.

27.     The effect of this fistula was to allow fecal material to travel into the bladder and this in turn caused sepsis and systemic infections that required management with antibiotics while waiting to have the fistula surgically repaired.

28.     Doctors at Banner Estrella Medical Center were not able to immediately operate due to their requirement that Gary lose 50 pounds prior to surgery to minimize the risk of complications.

29.     In the months prior to Gary's sentencing to the ADC, doctors at the Banner Estrella Medical Center told Gary that failure to perform both the pacemaker implant and the fistula repair would result in his death.

30.     Gary had scheduled follow ups with doctors at Banner Estrella Medical Center when he was remanded to the ADC's custody for Shoplifting and Trafficking in Stolen Property.

31.     Upon remand to the ADC's custody, Gary informed the ADC that he required antibiotics.

32.     Upon remand to the ADC's custody, Gary informed the ADC that he required blood pressure medication.

33.     Upon remand to the ADC's custody, Gary informed the ADC that he required a pacemaker implantation.

34.     Upon remand to the ADC's custody, Gary informed the ADC that he required surgery to repair his fistula.

35.     On October 2, 2014 Corizon and Medical Providers evaluated Gary's health conditions for the first time.

36.     On October 2, 2014 Corizon and Medical Providers diagnosed Gary with an intestinal fistula.

37.     Osteopathic Doctor Lance Ashworth D.O. was among the Corizon employees and contractors that diagnosed Gary on October 2, 2014 and failed to ensure proper medical care was promptly provided.

38.     On October 2, 2014 Corizon and Medical Providers diagnosed Gary with gross hematuria (visible and obvious blood in expelled urine).

39.     On October 2, 2014 Corizon and Medical Providers diagnosed Gary with essential hypertension (high blood pressure).

40.     On October 2, 2014 Corizon and Medical Providers diagnosed Gary with obstructive hypertrophic cardiomyopathy (the heart muscle had become unusually thick).

41.     On October 2, 2014 Corizon and Medical Providers diagnosed Gary with acute combined systolic and diastolic heart failure (the heart has difficulty filling chambers with blood and expelling the blood from the chambers).

42.     On October 2, 2014 Corizon and Medical Providers diagnosed Gary with an intestinovesical fistula (a fistula between the bladder and the bowel).

43.     An implanted cardiac pacemaker is commonly prescribed in cases of acute combined systolic and diastolic heart failure.

44.     An implanted cardiac pacemaker may be prescribed for treatment of hypertrophic cardiomyopathy.

45.     Following the multiple diagnosis made on October 2, 2014,  Gary was assigned to be housed at ASPC-Tucson Whetson Unit.

46.     Despite their immediate knowledge that Gary required antibiotics due to the fistula, Corizon and the Medical Providers failed to prescribe antibiotics until March 2015.

47.     Despite their immediate knowledge that Gary required surgical repair of his fistula, Corizon and the Medical Providers failed to surgically repair the fistula until March 15, 2016.

48.     1 year, 5 months and 13 days elapsed between the time Corizon and the Medical Providers diagnosed Gary's need for fistula repair surgery and the surgery being performed.

49.     While waiting for the surgery Gary routinely urinated feces due to material passing through the fistula from the bowel to the bladder.

50.     This fecal contamination resulted in infections, pain, and damage to Gary's organs including, but not limited to, the kidneys, heart and liver.

51.     The primary function of the kidneys is to filter waste from the blood stream.

52.     Gary's kidneys were extraordinarily stressed by the requirement to filter bacterial toxins and other products of the fecal material passing through Gary's unrepaired fistula.

53.     Despite their immediate knowledge that Gary required a pacemaker be implanted to avoid cardiac failure, Corizon and the Medical Providers failed to implant a pacemaker prior to Gary's death on April 16, 2017.

54.     Corizon and the Medical Providers initially prescribed  Gary incorrect dosages of his blood pressure medications.

55.     As a result of the incorrect dosages, Gary would black out, urinate blood, shiver, and at times his blood pressure levels would drastically fluctuate.

56.     Gary lost over 100 pounds during the first three months of his treatment by Corizon and the Medical Providers.

57.     On March 9, 2017 Gary was seen by Nurse Practitioner Andrea Roberts. ("Roberts")

58.     On March 9, 2017 Roberts was told by Gary that doctors had previously ordered a cardiac pace maker implant.

59.     On March 9, 2017 Roberts observed Gary to have a blood pressure of 152 over 98.

60.     Both the systolic reading of 152 and the diastolic reading of 98 are in the "Hypertension Stage 2" category as defined by the American Heart Association.

1   61.     On March 9, 2017 Roberts commented in her assessment notes that Gary's
2   hypertension was "not well controlled" by the medication Defendants had prescribed.

3   62.     Roberts was disturbed enough by her finding to order an electrocardiogram be
4   performed on March 9, 2017.

5   63.     The electrocardiogram displayed results that were consistent with over-medication
6   or requiring a pacemaker.

7   64.     Roberts requested that Gary's blood pressure be rechecked in two months and a
8   full clinic visit occur in six months.

9   65.     Neither follow up occurred as Gary died while in the care and custody of
10  Defendants on April 16, 2017.

11  66.     Registered Nurse Viola Cordova was among the Corizon employees and agents
12  that were responsible for providing appropriate health care at the time of Gary's death.

13  67.     Medical Doctor Bertram Hurowitz M.D. was among the Corizon employees and
14  agents that were responsible for providing appropriate health care at the time of Gary's death.

15  68.     On April 16, 2017 at roughly 11:00 a.m., fellow inmates Joseph Orsborn and
16  Michael Hinds observed Gary turn red and stop breathing.

17  69.     Orsborn and Hinds began administering CPR to Gary with Hinds performing chest
18  compressions and Orsborn attempting to clear Gary's airway.

19  70.     Guards responded and ordered Orsborn and Hinds to cease CPR while the guards
20  alerted Defendants by radio that urgent medical assistance was required in the 4-Able housing
21  unit where Gary resided.

22  71.     Defendants and other employees or contractors of Corizon walked in the housing
23  unit six minutes after the call for urgent medical assistance was transmitted.

24  72.     Defendants and other employees or contractors of Corizon had the guards place
25  Gary on a gurney and finally Defendants and other employees or contractors of Corizon began
26  performing CPR roughly eight minutes after the call for urgent medical assistance was placed.

27  73.     After three minutes without circulating blood, the brain begins to suffer hypoxic-
28  anoxic injury and by nine minutes severe and irreversible brain damage occurs.

7

74.     Gary was eventually transported to Banner University Medical Center in Tucson, Pima County, Arizona where resuscitation was unsuccessful.

75.     Gary was pronounced dead at 12:17 a.m. on April 16, 2017.

76.     Gary was 44 years of age at the time of death.

77.     An autopsy was performed by David Winston on April 17, 2017.

78.     The listed cause of death was atherosclerotic and hypertensive cardiovascular disease.

79.     The autopsy specifically noted that Gary suffered from arteriolonephrosclerosis (damage to the kidneys by a thickening of the vessels running into and throughout the kidney).

80.     Insults to the kidneys over time results in arteriolonephrosclerosis.

81.     Systemic infections cause harm and degradation to all internal organs due to toxins released by the infecting bacteria.

82.     A timely installation of the pacemaker that Defendants knew Gary required would have prevented Gary's death.

83.     Timely treatment of the fistula would have prevented roughly one and a half years of pain and insult to Gary's internal organs that likely contributed to his death.

84.     Timely treatment of the fistula would have prevented roughly one and a half years of unusual, extraordinary and unnecessary pain and suffering by Gary.

**COUNT ONE**
**Violation of Civil Rights – 42 U.S.C. § 1983**
(Defendant Medical Providers)

85.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth here.

86.     The Eighth Amendment to the United States Constitution, which applies to Defendants pursuant to the Due Process Clause of the Fourteenth Amendment, forbids one who acts under the color of law from being deliberately indifferent to the safety and well-being of individuals in their custody and control.

87.     At all relevant times, Medical Providers were acting under color of law.

8

88.     At all relevant times, Gary was in the custody and control of Medical Providers via their relationship with Corizon.

89.     Medical Providers violated the Eighth Amendment to the United States Constitution, as applicable to them via the Fourteenth Amendment, by each being deliberately indifferent to the safety and well-being of Gary, as set forth in substantial detail above.

90.     Medical Providers' conduct in this regard was objectively unreasonable and undertaken with willful, reckless and malicious indifference to Gary's constitutional rights and liberty interests and with no regard to the likelihood that harm would and did result.

91.     As a direct and proximate result of Medical Providers' deliberate indifference, Gary suffered a painful and premature death.

92.     As a direct and proximate result of Medical Providers' deliberate indifference, Gary suffered a cruel and unusual punishment for over fifteen months while Medical Providers knowingly and intentionally refused to surgically repair his fistula. This refusal to provide needed medical care caused Gary to suffer from pain, organ degradation and constant infections while under Medical Providers' care.

93.     As a direct and proximate result of Medical Providers' action and inactions, Linda Floyd forever lost the liberty interest guaranteed her by the Fourteenth Amendment to enjoy the companionship, society and support of her son, Gary.

94.     As a direct and proximate result of Medical Providers' actions and inactions, G.F. Jr. forever lost the liberty interest guaranteed him by the Fourteenth Amendment to enjoy the companionship, society and support of his father, Gary.

95.     The acts and omissions of Medical Providers were of such a nature as to entitle Linda Floyd, G.F. Jr. and The Estate of Gary Lee Floyd to an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

96.     Pursuant to 42 U.S.C. § 1988 and other applicable law, Linda Floyd, G.F. Jr. and The Estate of Gary Lee Floyd are entitled to an award of reasonable attorneys' fees and costs incurred in this matter.

**COUNT TWO**
**Violation of Civil Rights – 42 U.S.C. § 1983**
(Defendant Corizon)

97.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth here.

98.     The Eighth Amendment to the United States Constitution, which applies to Corizon pursuant to the Due Process Clause of the Fourteenth Amendment, forbids one who acts under the color of law from being deliberately indifferent to the safety and well-being of individuals in their custody and control.

99.     At all relevant times, Corizon was acting under color of law.

100.    At all relevant times, Gary was in the custody and control of Corizon.

101.    Corizon violated the Eighth Amendment to the United States Constitution, as applicable to them via the Fourteenth Amendment, by promulgating and permitting deliberately indifferent policies, procedures and/or customs.

102.    Corizon's conduct in this regard was objectively unreasonable and undertaken with willful, reckless and malicious indifference to Gary's constitutional rights and liberty interests and with no regard to the likelihood that harm would and did result.

103.    As a direct and proximate result of Corizon's deliberate indifference, Gary suffered a painful and premature death.

104.    As a direct and proximate result of Corizon's deliberate indifference, Gary suffered a cruel and unusual punishment for over fifteen months while Corizon knowingly and intentionally refused to surgically repair his fistula. This refusal to provide needed medical care caused Gary to suffer from pain, organ degradation and constant infections while under Corizon's care.

105.    As a direct and proximate result of Corizon's action and inactions, Linda Floyd forever lost the liberty interest guaranteed her by the Fourteenth Amendment to enjoy the companionship, society and support of her son, Gary.

10

106:     As a direct and proximate result of Corizon's actions and inactions, G.F. Jr. forever lost the liberty interest guaranteed him by the Fourteenth Amendment to enjoy the companionship, society and support of his father, Gary.

107.     The acts and omissions of Corizon were of such a nature as to entitle Linda Floyd, G.F. Jr. and The Estate of Gary Lee Floyd to an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

108.     Pursuant to 42 U.S.C. § 1988 and other applicable law, Linda Floyd, G.F. Jr. and The Estate of Gary Lee Floyd are entitled to an award of reasonable attorneys' fees and costs incurred in this matter.

**COUNT THREE**
**Wrongful Death**
(All Defendants)

109.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth here.

110.     At all relevant times, each and every Defendant had a duty to exercise ordinary care to provide for the safety and well-being of Gary.

111.     This includes responding with the appropriate legal care when informed that a prisoner in custody required proper medical care and life saving surgery.

112.     Defendants breached that duty systematically and repeatedly, including without limitation, their acts and omissions set forth above, by failing to adhere to minimum standards of care at multiple times during Gary's incarceration.

113.     As a direct and proximate result of Defendants' actions and inactions, Gary died a painful and premature death.

114.     Defendants acts and omissions set forth above also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created and unreasonable risk of harm to Gary and a high probability that substantial harm would result.

11

115.     Gary's death has caused, among other damage, Linda Floyd and G.F. Junior needless immobilizing and debilitating grief, anguish and suffering.

116.     Gary's death has also deprived Linda Floyd, G.F. Junior and other members of Gary's family of Gary's love, affection, companionship, comfort, financial support, guidance, and sustained other damages that will be demonstrated at trial.

## COUNT THREE
### Negligent Hiring, Training, and Supervision
### (Defendants Corizon)

117.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth here.

118.     Defendants Corizon owed a duty to Gary to ensure that all of their employees, officers, agents and independent contractors were qualified to serve in their respective roles before hiring and assigning employees to specific duty posts.

119.     Defendants Corizon also owed Gary a duty to ensure that all of Corizon's employees, officers, agents and independent contractors were properly trained and possessed the skill and knowledge to perform their assigned tasks in a competent manner.

120.     Defendants Corizon also owed Gary a duty to ensure that all of Corizon's employees, officers, agents and independent contractors were properly supervised in their assigned job tasks, including issuing appropriate discipline and terminating those individuals who demonstrated an inability to perform their assigned tasks.

121.     Defendants breached these duties as set forth above, including without limitation, failing to ensure that all of Corizon's employees, officers, agents and independent contractors, including but not limited to, defendant Medical Providers, charged with fulfilling Corizon's contractual obligation to provide medical care to Gary were properly trained and possessed appropriate skill to properly perform their assigned tasks.

122.     Corizon breached these duties as set forth above, including without limitation, by failing to ensure that employees, agents, officers and independent contractors executed their mandates and followed all appropriate directives.

12

123.    As a direct and proximate result of Defendants' breaches, Gary died a painful and premature death.

124.    Gary's death has caused, among other damage, Linda Floyd and G.F. Junior needless immobilizing and debilitating grief, anguish and suffering.

125.    Gary's death has also deprived Linda Floyd, G.F. Junior and other members of Gary's family of Gary's love, affection, companionship, comfort, financial support, guidance, and sustained other damages that will be demonstrated at trial.

### JURY TRIAL DEMAND

126.    Gary hereby demands a jury trial in this matter as to all her claims and against all Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court enter judgment against Defendants and in favor of them, as follows:

a.  For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b.  For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

c.  For pre- and post-judgment interest to the extent provided by law;

d.  For attorney fees and costs as permitted by 42 U.S.C. § 1988 and A.R.S. §12-341.01, and as otherwise authorized by all other applicable law;

e.  For such other relief as this Court may deem proper.

////
////
////
////

1    **RESPECTFULLY SUBMITTED** this 12th day of April, 2019.

2
                              **GOLDMAN & ZWILLINGER PLLC**
3

4                             /s/ Scott H. Zwillinger
                              Scott H. Zwillinger
5                             Jeremy L. Phillips
                              17851 North 85TH Street, Suite 175
6                             Scottsdale, Arizona 85255
                              *Attorneys for Plaintiff*
7

8

9    **ORIGINAL** of the foregoing filed with the
10   Clerk of Pima County Superior Court
     this 12th day of April, 2019.
11

12

13
     /s/ L. Simonini
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              14

Person/Attorney Filing: Scott H Zwillinger
Mailing Address: 17851 North 85th Street, Suite 175
City, State, Zip Code: Scottsdale, AZ 85255
Phone Number: (480) 626-8483
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019645, Issuing State: AZ
Attorney E-Mail Address: szwillinger@gzlawoffice.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF PIMA

Linda Floyd
Plaintiff(s),

Case No. C20191876

HON. RICHARD E GORDON

V.

Corizon Health, Inc., et al.
Defendant(s).

**SUMMONS**

To: Bertram Hurowitz MD

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1. A lawsuit has been filed against you. A copy of the lawsuit and other related court paperwork has been served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Office of the Clerk of the Superior Court, 110 West Congress Street, Tucson, Arizona 85701 or electronically file your Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If the papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS, not counting the day of service.

AZTurboCourt.gov Form Set #3343003

12/30/2016 CAC

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima_____ *April 12, 2019*_____.

**Gary Harrison**
Clerk of the Superior Court

By: *Alan Walker*_____
　　　　Deputy Clerk



12/30/2016 CAC

PERSON/ATTORNEY FILING: Scott H Zwillinger
MAILING ADDRESS: 17851 North 85th Street, Suite 175
CITY, STATE, ZIP CODE: Scottsdale, AZ 85255
PHONE NUMBER: (480) 626-8483
E-MAIL ADDRESS: szwillinger@gzlawoffice.com
[ ☐ ] REPRESENTING SELF, WITHOUT AN ATTORNEY
(IF ATTORNEY) STATE BAR NUMBER: 019645, Issuing State: AZ

FILED
GARY HARRISON
CLERK, SUPERIOR COURT

4/12/2019 4:29:41 PM

BY: ALAN WALKER
DEPUTY

Case No. C20191876
HON. RICHARD E GORDON

## ARIZONA SUPERIOR COURT, PIMA COUNTY

Linda Floyd
Plaintiff(s),

V.

Corizon Health, Inc., et al.
Defendant(s).

CASE NO: _____

**RULE 102(a) FASTAR CERTIFICATE**

The undersigned certifies that he or she knows the eligibility criteria set by FASTAR Rule 101(b) and

certifies that this case:

## (NOTE – YOU MUST CHECK ONE OF THE BOXES BELOW OR THE CLERK WILL NOT ACCEPT THIS FORM.)

☐ **DOES** meet the eligibility criteria established by Rule 101(b); or

☒ **DOES NOT** meet the eligibility criteria established by Rule 101(b).

Dated: April 12, 2019

Scott H Zwillinger /s/ _____
SIGNATURE

Scott H. Zwillinger (019645)
Jeremy L. Phillips (016702)
**GOLDMAN & ZWILLINGER PLLC**
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main:  (480) 626-8483
Facsimile:  (480) 383-6224
E-mail:  docket@gzlawoffice.com
*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| LINDA FLOYD, on behalf of herself and as personal representative of the Estate of Gary Lee Floyd and as next friend of G.F. JR., a minor; G.F. Jr. minor son of Gary Floyd,<br><br>                Plaintiffs,<br><br>v.<br><br>CORIZON HEALTH, INC., a Delaware corporation; CORIZON, INC., a Missouri corporation; CORIZON LLC, a Missouri limited liability company; CORIZON HEALTH OF NEW JERSEY, LLC, a New Jersey limited liability company; LANCE ASHWORTH, an individual, SPOUSE ASHWORTH, a married couple; BERTAM HUROWITZ, an individual, SPOUSE HUROWITZ, a married couple; VIOLA CORDOVA, an individual, SPOUSE CORDOVA, a married couple; ANDREA ROBERTS, an individual, SPOUSE ROBERTS, a married couple, J. DOES 1-100; WHITE PARTNERSHIPS 1-100; BLACK CORPORATIONS 1-100,<br><br>                Defendants. | Case No.:<br><br>**DEMAND FOR JURY TRIAL** |

1

1      Pursuant to Rule 38 *et seq.* Ariz. R. Civ. P., Plaintiffs hereby demand a trial by jury on all

2   claims permitted to be tried by a jury.

3

4      **RESPECTFULLY SUBMITTED** this 12th day of April, 2019.

5

6                          **GOLDMAN & ZWILLINGER PLLC**

7

8                          */s/ Scott H. Zwillinger*
                           Scott H. Zwillinger
9                          Jeremy L. Phillips
                           17851 North 85TH Street, Suite 175
10                         Scottsdale, Arizona 85255
11                         *Attorneys for Plaintiff*

12

13  **ORIGINAL** of the foregoing filed with the
    Clerk of Pima County Superior Court
14  this 12th day of April, 2019.

15

16

17  */s/ L. Simonini*

18

19

20

21

22

23

24

25

26

27

28

6-14-19

FILED
GARY HARRISON
JUN 14 PM 3:39
J. ORR, DEPUTY

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

### LINDA FLOYD VS. CORIZON HEALTH, INC.

Case:   C20191876
Date:   6/14/2019

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### NOTICE RE: IMPENDING DISMISSAL

It appearing that service of summons and complaint has not been made upon the defendant(s) listed below,

YOU ARE HEREBY NOTIFIED THAT the action will be dismissed without prejudice AS TO THE DEFENDANT(S) LISTED BELOW without further notice after 30 days from the date of this notice, unless good cause is shown why service was not made within the time limits established by Rule 4, Arizona Rules of Civil Procedure, and that additional time should be granted within which to accomplish service.

If you have reason to believe this notice has been issued in error please call
**Case Management Services, Dismissal Desk, at 520-724-3551.**

BY:   Aundrea Montoya
Case Management Services

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| PLAINTIFF | VS | DEFENDANT |
|---|---|---|
| FLOYD, LINDA | | CORIZON HEALTH, INC. |
| | | CORIZON, INC. |
| | | CORIZON, LLC |
| | | CORIZON HEALTH OF NEW JERSEY, LLC |
| | | ASHWORTH DO, LANCE |
| | | HUROWITZ MD, BERTRAM |
| | | CORDOVA RN, VIOLA |
| | | ROBERTS, ANDREA |

cc:   JEREMY PHILLIPS, ESQ.
      SCOTT H. ZWILLINGER, ESQ.